# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA

    v.

FRANKLIN H. FRYE,

      Defendant.

Criminal No. 71-56
RWR/DAR

## REPORT AND RECOMMENDATION

This matter is before the court on Defendant's Motion for Unconditional Release or in the Alternative, Conditional Release (Document No. 28) from St. Elizabeths Hospital, which has been referred to the undersigned United States Magistrate Judge for a report and recommendation.  *See* 04/09/2014 Minute Order; *see also* Memorandum Order (Document No. 33).  The undersigned conducted an evidentiary hearing on June 23 and June 30, 2014, at which it heard testimony from Mr. William Frye, Defendant's brother, and from Dr. Shilpa Krishnan, a clinical psychologist at St. Elizabeths Hospital.  Upon consideration of the parties' written submissions, the testimony adduced at the hearing, and the record herein, the undersigned will recommend that Defendant's motion for unconditional release be denied, and that Defendant's motion for conditional release be granted in part and stayed in part.[1]

## BACKGROUND

Defendant was found not guilty by reason of insanity on a charge of robbery in 1971, and

---

[1] Defendant withdrew his previous Motion for Unconditional Release Pursuant to D.C. Code Section 24-501(k) (Document No. 26) on the record at the June 23, 2014 hearing.

was committed by the court to Saint Elizabeths Hospital ("St. Elizabeths" or "Hospital").

Defendant remains committed at Saint Elizabeths, although, the court has permitted periods of

conditional release.  Most recently, the previously assigned District Judge entered an Order

(Document No. 25) on December 20, 2005, which permitted Defendant "to reside in a Hospital

approved 24-hour supervised community residential facility" under specified conditions.[2]

At the evidentiary hearing, Defendant introduced expert testimony from Dr. Krishnan, a

clinical psychologist licensed in the District of Columbia, who first met Defendant when she was

a post-doctoral resident at St. Elizabeths, and who is now the clinical psychologist for the unit at

St. Elizabeths in which Defendant resides.  Dr. Krishnan provided background with respect to

Defendant's previous periods of conditional release, indicating that in 2001, Defendant was

conditionally released from the Hospital to reside in the community, but was subsequently

returned to the Hospital as an inpatient after he "decompensated."  To illustrate Defendant's

"decompensation," Dr. Krishnan described an incident in which Defendant hid a knife in his

room after he began suffering from paranoia that individuals wished to harm him.  Dr. Krishnan

testified that in 2005, the Hospital began preparing Defendant to reside in the community, but

that Defendant was not content with the initial outpatient housing options, because of his

concerns about the cost, and that once a suitable housing facility was identified, Defendant had

"decompensated" and ultimately was not released.

According to a March 2014 report from the Hospital, and the testimony of Dr. Krishnan,

Defendant has been diagnosed with "Schizoaffective Disorder, Bipolar Type, Neuroleptic

---

[2] The court's December 2005 order recounts, and the entries on the docket reflect, that Defendant was granted periods of conditional release in January 1998 (outpatient status with special conditions); in September 1999 (outpatient status in hospital-approved housing); and in November 2003 (weekend day visits and holiday visits with family members).  Dr. Krishnan testified that Defendant was also conditionally released in 1980.

Induced Tardive Dyskinesia and Parkinsonism, Cognitive Disorder Not Otherwise Specified,

Mixed Receptive-Expressive Language Disorder, and Borderline Intellectual Functioning."[3]  Dr.

Krishnan elaborated that Defendant's mental illness – Schizoaffective Disorder, Bipolar Type –

presents both "psychotic components" and "mood components."  With respect to the psychotic

components, Dr. Krishnan testified that Defendant experiences paranoia and suspicions that

others will harm him, and exhibits disorganized thoughts and speech.  With respect to the mood

components, Dr. Krishnan testified that Defendant experiences irritability, intensifications, and

fluctuations in his mood.  Dr. Krishnan explained that Defendant's Neuroleptic Induced Tardive

Dyskinesia is a side effect of medication that he takes, and that it causes Defendant to make

certain repetitive movements.

Dr. Krishnan testified that in addition to his mental illness, Defendant also has cognitive

limitations, and that after neuropsychological testing and evaluations, he has been diagnosed with

Cognitive Disorder Not Otherwise Specified, which captures a broad range of deficits.  Dr.

Krishnan testified that Defendant is also diagnosed with Mixed Receptive-Expressive Language

disorder, a development disorder that causes the individual to have difficulty expressing and

understanding language.  Due to his cognitive limitations, the Hospital recently sought

appointment of a guardian for Defendant; Defendant did not contest the request, and a guardian

was appointed.

Defendant takes a mood stabilizer and an antipsychotic medication to manage his mental

illness.  Dr. Krishnan testified that his medication helps reduce the intensity of his symptoms,

---

[3]  Because the Hospital's report (Document No. 30) was filed under seal, the court will limit its references to information that was also presented in open court at the evidentiary hearing.

and that without medication, Defendant's mental health would "deteriorate."  Dr. Krishnan

opined that Defendant cannot independently take his medication, but noted that the Hospital staff

is able to assist Defendant in taking his medication, sometimes with coaxing, and that the

Hospital has never had to administer medication to Defendant involuntarily.

Dr. Krishnan testified that while Defendant has had instances of physical aggression in

the past six months, none resulted in a "serious outcome."  In two instances, Defendant hit

another resident at the Hospital, and in one instance, he hit a nurse after he was denied certain

privileges.  As a consequence of these incidents, the Hospital put Defendant's grounds privileges,

which allow him to utilize certain areas of the Hospital, on hold.

Pursuant to previous orders of the court, Defendant is permitted to leave the Hospital for

day visits with his family.  Mr. William Frye, Defendant's brother, testified that he has taken

Defendant on such day visits to his home for family get-togethers, to stores to go shopping, to

restaurants for meals, and to a nursing home facility to visit their aunt.  Mr. William Frye

testified that Defendant has not attempted to "stray" from his presence, and that Defendant has

never had complications with the people with whom he has interacted, including personnel at

business establishments.[4]  Mr. William Frye testified that Defendant is friendly with people he

encounters, and that their family members enjoy Defendant's company during his visits.  Despite

this, Mr. William Frye recognized the challenges that Defendant faces in the community,

testifying that he exhibits "awkwardness" in public because he does not have an understanding of

certain social norms.  Mr. William Frye opined that Defendant would have difficulty living alone

because of the extended time he has spent in an institution.

---

[4] Dr. Krishnan agreed that Defendant "does well" on his day trips with family.

The court, in prior orders, also authorized Defendant to enter the community for "community based structured activity or employment." *See* Order Document No. 25) at 4.  Dr. Krishnan testified that last year, Defendant attended a day program at the Washington Hospital Center for a few months, but could no longer attend after the program closed for restructuring. She further testified that Defendant returned to the program in April 2014, and until recently, attended three times a week.  The Hospital discontinued Defendant's participation following an incident in which Defendant was accused of taking a case manager's phone; however, Dr. Krishnan testified that the Hospital plans to return Defendant to the program, or another day program, once he "stabilizes."  Dr. Krishnan also described an incident that occurred at the day program last year, in which Defendant exhibited some aggression because he believed that a security guard at the Washington Hospital Center pulled a gun on him.

Although Defendant has been permitted to leave St. Elizabeths for family trips and to participate in a day treatment program at an unlocked facility, Dr. Krishnan testified that in the past decade, Defendant has not attempted to leave, and has consistently returned to St. Elizabeths.  Defendant previously utilized public transportation – more specifically, the MetroAccess service – to get to the day program; however, following an incident where Defendant refused to enter the van due to a suspicion regarding the driver, he now uses the Hospital's transportation.

Dr. Krishnan testified, and the March 2014 report reflects, that the Hospital recommends certain gradual, or intermediate steps to prepare Defendant for release into the community.  The Hospital further recommends that Defendant's release to reside in the community be contingent upon the following intermediary steps.  The Hospital recommends that Defendant attend a day

program three times a week without behavioral incidents, obtain and maintain unsupervised

grounds privileges at the Hospital, and continue compliance with his prescribed medication.  Dr.

Krishnan proposed a compliance period of three months, but noted that Defendant's

circumstances may alter the period of time that is necessary.  The Hospital further recommends

that the court permit a team of case managers, such as the Hospital's Assertive Community

Treatment ("ACT") team, to accompany Defendant into the community to assist and monitor him

with "discharge related" tasks.

Once Defendant demonstrates his preparedness through these intermediate steps, the

Hospital recommends that he be conditionally released to reside in a contract community

residential facility ("CRF"), which is an unlocked group home which is staffed 24 hours a day,

including by medical staff that can administer his medication and assist him with his medical

conditions.  Dr. Krishnan testified that once released to reside in the contract CRF, Defendant

will be supported by the Hospital's Forensic Outpatient team, which will assist him with his

prescription renewals, and provide therapy and other treatment.  Dr. Krishnan indicated that if

Defendant fails to comply with the conditions of release, the Hospital would bring him back to

St. Elizabeths as an inpatient.  Based on her assessment of Defendant, Dr. Krishnan opined that

under these recommended conditions, Defendant would not be likely to injure himself or others.

**CONTENTIONS OF THE PARTIES**

In support of his motion, Defendant initially contended that he "has sufficiently recovered

his sanity such that he will not pose a danger to himself or others if unconditionally released, or

in the alternative conditionally released on convalescent leave."  Statement of Facts and

Memorandum of Law in Support of Motion ("Memorandum") (Document No. 28) at 2-3.

However, since the filing of his motion, Defendant has focused on his alternative request for

conditional release.  Prior to the evidentiary hearing, counsel for Defendant and counsel for the

government submitted a proposed consent order for conditional release, which is attached to this

Report and Recommendation as Appendix 1.  At the evidentiary hearing, Defendant limited his

presentation to evidence and arguments in support of his request for conditional release.

Accordingly, the court limits its discussion to Defendant's request for conditional release, and

will recommend that Defendant's motion for unconditional release be denied.[5]

        With respect to his request for conditional release, Defendant submits that "nearing 70,

[he now] displays no dangerous behavior of any kind," and notes that "until recently," he traveled

to and from a day treatment program in the community "on his own via public transportation

. . . ."  Memorandum at 2, 5.  Defendant thus requests "conditional release so that he may live in

the community and receive outpatient services . . . ."  *Id.* at 5.  On the record at the evidentiary

hearing, Defendant, through counsel, expressed his desire for the court to schedule periodic

status hearings to ensure that the court's order is effectuated.

        The government does not oppose Defendant's "gradual transition to the community as his

mental condition warrants."  Government's Opposition to Defendant's Motion for Unconditional

or Conditional Release (Document No. 29) at 2, 6.  As indicated, counsel for the government

joined in Defendant's submission of a proposed consent order for conditional release.  *See*

Appendix 1.

---

        [5] Under the standard for unconditional release established by this Circuit in *Overholser v. O'Beirne*, 302
F.2d 852 (D.C. Cir. 1961), the individual must demonstrate "'(1) that he has recovered his sanity and (2) that such
recovery has reached the point where he has no abnormal mental condition which in the reasonably foreseeable
future would give rise to danger to the petitioner or to the public in the event of his release.'" *Jackson v. United
States*, 641 A.2d 454, 456 (D.C. 1994) (quoting *Overholser* and affirming the denial of a motion under D.C. Code §
24-301(k), which is now § 24-501(k)).

**APPLICABLE STANDARD**

The District of Columbia Code provides that a person who is "in custody or conditionally released from custody" after being acquitted by reason of insanity "may move the court having jurisdiction to order his release, to release him from custody, to change the conditions of his release, or to grant other relief." D.C. Code. § 24-501(k)(1). Generally, the court must conduct a "prompt hearing," "determine the issues, and make findings of fact and conclusions of law . . . ." § 24-501(k)(3). The movant bears the burden of demonstrating, by a preponderance of the evidence, that he is entitled to the relief that he requests. *See id.*; *see also Brown v. United States*, 682 A.2d 1131, 1136 (D.C. 1996).

Under the standard for conditional release, set forth in *Hough v. United States*, 271 F.2d 458 (D.C. Cir. 1959), the court "must conclude that the individual has recovered sufficiently so that under the proposed conditions – or under conditions which the statute empowers the court to impose as it shall see fit – such person will not, in the reasonable future be dangerous to himself or others." *Jackson v. United States*, 641 A.2d 454, 456 (D.C. 1994) (internal quotation marks and alteration omitted); *see also Reese v. United States*, 614 A.2d 506, 511 (D.C. 1992) ("[T]o obtain a conditional release, the criminal acquittee must demonstrate that, if still mentally ill, he or she will not be a danger in the reasonable future.").

"In order to approve a conditional release . . . the district court must independently 'weigh the evidence' and make a de novo determination that the patient will not in the reasonable future endanger himself or others." *United States v. Ecker*, 543 F.2d 178, 187 (D.C. Cir. 1976); *see also United States v. Hinckley*, 407 F. Supp. 2d 248, 254 (D.D.C. 2005) (citation omitted) ("[T]he court is obligated to make its own independent judicial determination regarding the

patient's dangerousness."), *modified*, 462 F. Supp. 2d 42 (D.D.C. 2006); *cf. United States v.*

*Hinckley*, 625 F. Supp. 2d 3, 22-23 (D.D.C. 2009) (citations omitted) (considering a proposal by

St. Elizabeths Hospital for conditional release pursuant to D.C. Code § 24-501(e), and applying

the same standard – "[t]he ultimate question is whether a preponderance of the evidence supports

the proposition that [the defendant] will not, in the reasonable future, be a danger to himself or to

others under the proposed conditions of release and/or other reasonable conditions of release

imposed by the Court.").  The issue of "dangerousness" is a mixed question of law and fact, and

the court "is not required to accept the opinion of any expert witness, or even the unanimous

opinion of all the experts, but must consider all relevant evidence including 'the patient's

hospital file, the court files and records in the case, and whatever illumination is provided by

counsel.'"  *Hinckley*, 407 F. Supp. 2d at 255 (citing *Ecker*, 543 F.2d at 184-85, 190); *see also*

*Reese*, 614 A.2d at 513 (citation omitted) ("[T]he trial judge may properly consider 'the hospital

records, files, and psychiatric history of the acquittee,' as well as 'the acquittee's demonstrated

behavior, including the act for which [he] was prosecuted as well as any other prior crimes or bad

acts.'").

**DISCUSSION**

      The undersigned, upon consideration of the testimony presented by Defendant, finds by a

preponderance of the evidence that should Defendant comply with the Hospital's proposed

intermediate conditions, he will not "in the reasonable future be dangerous to himself or others."

*See Jackson*, 641 A.2d at 456.  In so finding, the undersigned accepts the unrebutted evidence

presented by Defendant that he is able to lessen the symptoms of his mental illness, particularly

his suspicions that other individuals will harm him, by taking his prescribed medication.  The

undersigned also accepts the unrebutted testimony of Dr. Krishnan and Mr. William Frye that

Defendant has successfully entered the community for excursions with his family members.  The

undersigned accepts the unrebutted testimony of Dr. Krishnan that in the past decade, Defendant

has not attempted to leave the Hospital, despite his excursions and his participation in a program

at an unlocked facility.  The undersigned finds that the proposed conditions contain adequate

supports – notably, guidance by case managers through the ACT team and through a day

treatment program, services administered by staff at St. Elizabeths, and continued interactions

with his family members – to mitigate the risks posed by Defendant's conditional release into the

community.

        The undersigned makes no finding with respect to whether Defendant will pose a danger

to himself or to others if conditionally released to reside in the community; indeed, any such

finding at this time would be premature.  The Hospital opines – and Defendant and the

government appear to concur – that Defendant's conditional release is more likely to be

successful if Defendant is afforded gradual increases in his privileges, with appropriate support,

given the significant amount of time that Defendant has spent living in an institution.

        The undersigned acknowledges Defendant's contention that the court should grant his

request to be permitted to reside in the community, and confer discretion upon the Hospital to

subsequently determine when that placement should occur.  The undersigned concludes,

however, that it is appropriate, and prudent, to stay consideration of Defendant's request for

placement into a community residential facility pending a status hearing on October 1, 2014.[6]

---

[6] For this reason, and the further reasons set forth on the record, the undersigned declined to recommend that the court sign the parties' proposed order.  *See* Appendix 1.

This will provide the court the benefit of additional information regarding Defendant's

compliance with the proposed intermediate steps, upon which it can make a determination with

respect to the likelihood that Defendant will pose a danger to himself or others if released to

reside in the community.  *Cf. United States v. Hinckley*, No. 81-0306, 2013 WL 6699482, at *1

(D.D.C. Dec. 20, 2013) (considering a request for conditional release made by St. Elizabeths

Hospital pursuant to D.C. Code § 24-501(e), and recounting that "[t]hroughout these

proceedings, the Court has expanded [the defendant's] privileges outside the Hospital

incrementally, always contingent upon careful monitoring and his and his family's compliance

with the conditions imposed by the Court").

**CONCLUSION**

On the basis of the foregoing findings, it is, this 21st day of July, 2014,

**RECOMMENDED** that Defendant's Motion for Unconditional Release or in the

Alternative, Conditional Release (Document No. 28) be **DENIED** with respect to Defendant's

motion for unconditional release, and **GRANTED IN PART** with respect to Defendant's motion

for conditional release; and it is

**FURTHER RECOMMENDED** that the court enter the order which is attached to this

Report and Recommendation as Appendix 2.

                                        _____/s/_____
                                        DEBORAH A. ROBINSON
                                        United States Magistrate Judge

**Within fourteen days, either party may file written objections to this report and**

**recommendation.  The objections shall specifically identify the portions of the findings and recommendations to which objection is made and the basis of each such objection.  In the absence of timely objections, further review of issues addressed herein may be deemed waived.**

# APPENDIX 1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| UNITED STATES OF AMERICA | : | |
|---|---|---|
| | : | Criminal No. 71-56 |
| v. | : | (DAR) |
| | : | |
| FRANKLIN FRYE | : | |

_____

## CONSENT ORDER FOR CONDITIONAL RELEASE

This matter came before the Court upon Acquittee Franklin Frye's January 8, 2014, motion

under D.C. Code 24-501(k) for unconditional release, or in the alternative conditional release.

On June 9, 1971, acquittee was found not guilty by reason of insanity of Robbery.   He was

committed to Saint Elizabeths Hospital for an indeterminate period of time after a <u>Bolton</u> hearing.[1]

Acquittee's diagnoses include Schizoaffective Disorder, Bipolar Type, Cognitive Disorder Not

Otherwise Specified, Mixed Receptive-Expressive Language Disorder, and Borderline Intellectual

Functioning. He is currently prescribed Seroquel, Amantadine, and Depakote to treat his

psychatric condition(s).

Since his commitment to the Hospital, acquittee has resided on all levels of security and

been granted numerous conditional release privileges.   He was most recently granted a

conditional release to live in the community on December 20, 2005.   However, his release to the

community was never effectuated after the order was entered over eight years ago. Acquittee last

resided in the community from January 9, 2001 until April 23, 2001.

On March 10, 2014, the Hospital filed a letter with the Court reporting that the Hospital is

opposed to his unconditional release, but supports a gradual return to convalescent leave status.

The Hospital also announced their intention to seek a court-appointed guardian for Mr. Frye. A

_____

[1] <u>Bolton v. Harris</u>, 395 F.2d. 642 (D.C. Cir. 1968).

petition for guardianship was filed in D.C. Superior Court by the Department of Behavioral
Health. A hearing was held on May 15, 2014 before Judge John Campbell, and Mr. Frye agreed to
have a guardian appointed. Robert Scott, Esq. was appointed as general guardian for Mr. Frye.

Upon consideration of the representations made by both counsel, and by representatives of
Saint Elizabeths Hospital in their letter to the Court, the Court finds that Franklin Frye will not, in
the reasonably foreseeable future, present a danger to himself or others because of mental illness if
conditionally released as described below.

Accordingly, it is by the Court this _____ day of June, 2014,

**ORDERED** that acquittee, Franklin Frye, shall be conditionally released from Saint
Elizabeths Hospital under the following conditions:

1.   In preparation for convalescent leave, acquittee may enter the community
accompanied by his assigned case manager from a Core Service Agency, or another
Hospital-approved escort to address personal needs, such as shopping, recreational activities, and
visiting potential residences.   Acquittee may continue to visit the community accompanied by his
brother, Rev. William Frye, or his sister, Penelope Campbell, for family visits as approved by the
Hospital. Acquittee shall remain under the supervision of his case manager, family member, or
other Hospital-approved escort at all times while on community outings.

2.   Acquittee may be placed on convalescent leave at the Hospital's discretion to reside in
a Hospital approved community residential facility (CRF) which will provide 24 hour monitoring,
meals and administration of prescribed medication.   The Hospital shall notify the Court and
counsel of acquittee's address upon his placement in the community as well as the name and
telephone number of the CRF operator. Upon the entry of this order, the Hospital shall begin
investigating outplacement possibilities within the next ninety (90) days, including applying for

placement at a CRF if an appropriate option is identified.

3. Once acquittee is outplaced to reside in the community, acquittee's assigned case manager and/or the Hospital's Outpatient Department shall maintain frequent contact of not less than once per week with acquittee's CRF provider in order to monitor his mental condition, behavior, and treatment compliance at the CRF.   The CRF operator shall agree to immediately notify the case manager and Saint Elizabeths Hospital if acquittee fails to take his prescribed medication or commits a significant violation of the rules of the CRF.

4.    Acquittee may receive outpatient case management, psychiatric, medical, employment, and substance abuse services from any Hospital-approved Core Service Agency capable of providing intensive community-based services.

5.    Acquittee's case manager shall maintain regular in person contact with acquittee at a frequency of not less than once per week and shall also maintain contact with the Hospital's Outpatient Department no less than once per month.

6.    The case manager shall submit monthly written reports to Saint Elizabeths Hospital with copies to the Court, United States Attorney's Office, and counsel for acquittee.   The reports shall include documentation as to acquittee's treatment and medication compliance as well as his progress in the community and compliance with the conditions of his release.   Acquittee and his case manager shall meet with the Hospital's Outpatient Department staff at least once every three months to review his progress and treatment plan.

7.    If necessary, the case manager shall be responsible for assisting acquittee with transportation to all of his appointments and activities.   The case manager shall also assist acquittee with community living related issues including medication compliance.

8.    Acquittee shall participate in all therapeutic activities as recommended by the Hospital and/or the Core Service Agency including meeting with the psychiatrist or psychologist, and a

3

structured daily activity at least three days per week such as his current day treatment program. At the Hospital's discretion, acquittee may transition to other Hospital approved structured daily activities.   The Hospital shall notify the Court and counsel of any changes in acquittee's structured daytime activities.

9.   Upon his placement on convalescent leave, acquittee shall receive psychiatric treatment and medication from Saint Elizabeths Hospital's Forensic Outpatient Department. During the first three months of his outplacement, acquittee shall report to the Hospital's Forensic Outpatient Department located at 35 K Street, N.E., Washington, D.C., once per week for treatment and monitoring of his psychiatric condition, and compliance with the conditions of release.   Thereafter, he shall report to the Outpatient Department as often as required by the Hospital but not less than once per month for treatment and monitoring of his psychiatric condition and compliance with the conditions of release.   He shall comply with random drug and alcohol urine testing.

10.   At the Hospital's discretion, acquittee may transfer psychiatric treatment and medication management to his assigned Core Service Agency.   However, it shall remain the Department of Behavioral Health's responsibility to ensure that acquittee receives psychiatric services and medication as clinically indicated.

11.   Acquittee shall comply with all requests by Hospital staff for information relating to any medical and/or psychiatric treatment he may receive by parties in the community.   Any health care provider shall provide all treatment information regarding acquittee's care to Saint Elizabeths Hospital upon request.

12.   Acquittee shall abide by all laws, not consume alcohol or illegal drugs, not be arrested for cause, and take all medications prescribed to him.

13.   Saint Elizabeths Hospital shall provide prior written notification to the Court of

acquittee's intention to travel fifty miles outside the Washington, D.C. metropolitan area.   Said

notification shall be provided at least seven business days prior to the date of intended travel.

14.   The Core Service Agency shall immediately notify the Hospital if acquittee fails to

comply with any conditions of release and if possible, shall escort him to the Outpatient

Department for an evaluation.

15.   If acquittee fails to comply with any conditions of release such that the Outpatient

Department staff determine that he is in need of inpatient treatment, acquittee shall be returned to

Saint Elizabeths Hospital.   If acquittee fails to cooperate with transport to Saint Elizabeths

Hospital, the Outpatient Department shall notify the District of Columbia's Metropolitan Police

Department who shall be provided with a copy of this Court's Order and shall assist in escorting

acquittee to Saint Elizabeths Hospital at 1100 Alabama Avenue, S.E., Washington, D.C. 20032.

16.   If acquittee's mental condition deteriorates, or if he violates the conditions of this

release he shall be returned to inpatient care at the Hospital, with due notification to the Court and

counsel.   Thereafter, acquittee may not resume convalescent leave without prior notice to the

Court and counsel.   If the government objects to acquittee's return to convalescent leave a hearing

shall be set and acquittee shall remain an inpatient until the conclusion of said hearing.

17.   This matter shall be set for a status hearing on September 29, 2014, for a report from

the Hospital on their progress in outplacing Mr. Frye to the community.

_____
MAGISTRATE JUDGE DEBORAH ROBINSON
United States District Court for D.C.

Copies to:

Silvana Naguib
Public Defender Service
633 Indiana Avenue, N.W.
Washington, D.C. 20004

Colleen M. Kennedy, Assistant U.S. Attorney
U.S. Attorney's Office
555 4th Street N.W
Washington, D.C. 20001

Dr. Kylee Ann Stevens
Director of Forensic Services
Saint Elizabeths Hospital
1100 Alabama Avenue S.E.
Washington, D.C. 20032

# APPENDIX 2

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>    v.<br><br>FRANKLIN H. FRYE,<br><br>       Defendant. | Criminal No. 71-56<br>RWR/DAR |

**ORDER**

For the reasons set forth in the Report and Recommendation filed in this matter, it is hereby

**ORDERED** that Defendant's Motion for Unconditional Release or in the Alternative, Conditional Release (Document No. 28) is **DENIED** with respect to Defendant's motion for unconditional release, and **GRANTED IN PART** with respect to Defendant's motion for conditional release; and it is

**FURTHER ORDERED** that:

(1) Defendant may enter the community accompanied by, and under the supervision of, his case manager from a core service agency, by St. Elizabeths Hospital's ACT team, or by another Hospital-approved escort, for discharge related tasks.

(2) Defendant may continue to enter the community accompanied by, and under the supervision of, his family members, subject to the approval of the Hospital.

(3) Defendant may continue to enter the community to participate in a day treatment program, subject to the approval of the Hospital.

(4) A representative of St. Elizabeths Hospital shall submit status reports on a monthly basis to the court, counsel for Defendant, and the assigned Assistant United States Attorney.  The status reports shall describe Defendant's compliance with the current provisions of his conditional release, and his progress towards outplacement in the community.

(5) The parties shall appear for a status hearing on October 1, 2014 at 9:30 a.m. to address Defendant's request for a conditional release order permitting him to reside in a contract community residential facility; and it is

**FURTHER ORDERED** that Defendant's request for an order permitting him to reside in a contract community residential facility is **STAYED** pending the next status hearing, to allow Defendant an opportunity to demonstrate compliance with the following intermediate conditions:

(1) attendance at a day treatment program without behavioral incidents;

(2) trips into the community with the support of the Hospital's ACT team, or other case-managers, for discharge related tasks;

(3) compliance with his prescribed psychiatric medication and treatment; and

(4) appropriate exercise of his Hospital privileges, including obtaining and maintaining unsupervised grounds privileges.

_____
RICHARD W. ROBERTS
Chief Judge